UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                              Case No.: 22-22472-cgm

   John W. Wells,                                   Chapter 13

                                            Judge: Cecelia G. Morris

                        Debtor.
---------------------------------------------------------X

## LIMITED OBJECTION TO DEBTOR'S REQUEST FOR LOSS MITIGATION

   TO:   THE HONORABLE CECELIA G. MORRIS,
           UNITED STATES BANKRUPTCY JUDGE

Katherine Heidbrink, attorney for SN Servicing Corporation as servicer for U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust ("Secured Creditor"), hereby affirms under penalty as follows:

1. I am an Associate Attorney of Friedman Vartolo, LLP, attorneys for the Secured Creditor.

2. Secured Creditor is the holder of a Note and Mortgage agreement on the Debtor's real property known by and located at 7 Fernwood Avenue Rye, NY 10580 (the "Property").

3. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 22, 2022. The instant bankruptcy case is the Debtor's second recent filing. The Debtor previously filed Ch. 13 Case No. 19-23627 on September 12, 2019, and that case was ultimately dismissed due to the Debtor's failure to make plan payments. The Debtor has since retained counsel and filed the current bankruptcy case.

4. Secured Creditor hereby objects to loss mitigation on the ground that is has already extended a loan modification offer, which the Debtor has not accepted. Additionally, a modification is likely infeasible for the reasons indicated here.

5. In November 2021, prior to the pendency of the instant bankruptcy case, the Debtor offered Secured Creditor $200,000 towards a loan modification. Secured Creditor accepted this offer and offered a loan modification with the following terms:

**November 2021 Modification Offer:**

Good faith payment of $200,000 to be received by: 11/15/21.
Estimated principal balance after application of down payment: $477,723.79
Rate: 4.50%
Term: 480 months
Monthly principal & interest payment $2,147.67
Monthly escrow payment $2,449.59
Monthly total payment $4,597.26
Permanent loan modification to start with the first payment due December 1, 2021.

6. The Debtor is not the sole owner of the Property or the only mortgagor on Secured Creditor's loan. Upon information and belief, the Debtor co-owns the Property with Shelley Grose Wells (the "Co-Debtor"). According to the Debtor's Schedule J, the Debtor is separated from, and still legally married to, the Co-Debtor. The Co-Debtor is also a mortgagor on Secured Creditor's loan, and, as such, must sign off on any modification that may be offered.

7. Since November 2021, our firm's foreclosure department has been in routine contact with the Debtor, who alleged that he was going to sign the existing modification offer and take it to Nashville to have the Co-Debtor sign it. There have been numerous delays in this process on the Debtor's end, and Secured Creditor has voluntarily extended the start date of the proposed modification several times, most recently from April 1, 2022 to June 1, 2022. To date, the proposed modification has not been signed by all parties and returned to Secured Creditor. A copy of the proposed modification is attached as **Exhibit A.**

8. Secured Creditor remains willing to have the Debtor and Co-Debtor sign the proposed modification, but respectfully requests that this Court provide a deadline by which the proposed modification must be signed.

9. Secured Creditor also notes that it is not willing to engage in the delay inherent in a traditional loss mitigation review, given that it has had a permanent modification offer extended since November 2022, 10 months ago.

10. Lastly, Secured Creditor notes that there are significant issues with the loans on the Property. In addition to the Co-Debtor's interest in the Property, according to the Debtor's Schedule D, the Property is encumbered by all of the following liens:

a. A second mortgage in favor of Citibank, N.A. ("Citi") in the approximate amount of $245,072.81. Secured Creditor reasonably believes that Citi's scheduled foreclosure sale was the impetus behind the instant bankruptcy petition. Secured Creditor notes that even if it modifies its loan, if the Debtor loses title to the Property to the second mortgagee's foreclosure, the title defect itself will prevent modification. The Debtor's proposed Ch. 13 plan is dependent upon a successful loss mitigation with Citi.

b. New York State tax warrants, the secured amount of which totals $111,642.35 as of the petition date, according to Claim No. 1.

c. Numerous and significant judgment liens listed on Schedule D.

11. Should the Co-Debtor not wish to cooperate with modification, or should one of the other lienors obtain stay relief and foreclose on the Property, a modification of Secured Creditor's loan will no longer be feasible. In particular, the tax liens impair Secured Creditor's interest, and must be addressed as part of any plan or modification.

**WHEREFORE,** Secured Creditor respectfully requests that this Court deny the Request, in its entirety, as requested herein; or grant loss mitigation, but with a deadline by which the Debtor

must fully execute the existing modification offer, with all signatures, and return same to the Secured Creditor; and further relief that this Court deems proper.

Dated: August 5, 2022
Fresh Meadows, New York

Respectfully submitted,
FRIEDMAN VARTOLO, LLP.

By: /s/ Katherine Heidbrink
KATHERINE HEIDBRINK, ESQ.
1325 Franklin Avenue, Suite 160
Garden City, New York 11530
Telephone: 212-471-5100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                                  Case No.: 22-22472-cgm

    John W. Wells,                                                        Chapter 13

                                                        Hon. Judge: Cecelia G. Morris

                           Debtor.
------------------------------------------------------------X

I, Katherine Heidbrink, an attorney duly admitted to practice law before the District Courts of the State of New York, respectfully certify that I am not a party to this action, am over 18 years of age and reside in the State of New York. On August 5, 2022, I served the foregoing Opposition by mailing the same in a sealed envelope, with postage paid thereon, in an official depository of the United States Post Office within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

John W. Wells
7 Fernwood Avenue
Rye, NY 10580

James J. Rufo
The Law Office of James J. Rufo
1133 Westchester Avenue
Suite N202
White Plains, NY 10604

Krista M. Preuss
Chapter 13 Standing Trustee
399 Knollwood Road
White Plains, NY 10603

United States Trustee
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

Citibank, N.A.
Attn: President

388 Greenwich St
New York, NY 10013

New York State Dept. Taxation & Finance
Bankruptcy Section
P.O. Box 5300
Albany, NY 12205-0300

David A. Gallo & Associates LLP
47 Hillside Avenue, 2nd Floor
Manhasset, NY 11030

/s/ Katherine Heidbrink
KATHERINE HEIDBRINK, ESQ.

# EXHIBIT A

Loan #█████████

**After Recording Return To:**
SN Servicing Corporation
323 5th Street
Eureka, California 95501
Attn: Collateral Department

This document was prepared by <u>Wendy Donnelly</u>

# MODIFICATION AGREEMENT

BEFORE the undersigned Notaries Public, in and for the respective county/parish and state listed hereafter, came and appeared the following parties:

JOHN W WELLS ("Borrower") and SHELLEY GROSE WELLS ("Vested Interest") hereinafter referred to as ("BORROWER(S)") and SN Servicing Corporation, servicing agent for U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust with a mailing address of 323 5th Street, Eureka, California 95501, as ("LENDER")

Who declared that they are entering into this Agreement as follows:

Borrower(s) acknowledges that as of the date stated herein, the Lender is the holder by Assignment of certain Note ("NOTE") and Mortgage, Deed of Trust, Security Deed ("SECURITY INSTRUMENT") made by JOHN W WELLS and SHELLEY GROSE WELLS in favor of AMERICAN HOME MORTGAGE in the original principal amount of $228,350.00 together with an interest rate of 6.750% per annum. The indebtedness secured by this Security Instrument is evidenced by certain Note dated December 13, 1993, with an interest rate of 6.750% payable in monthly installments to the order of Lender.

This Modification Agreement ("AGREEMENT"), made May 11, 2022 between JOHN W WELLS ("Borrower") and SHELLEY GROSE WELLS ("Vested Interest") and U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust ("LENDER"), amends and supplements the Mortgage, Deed of Trust, Security Deed ("SECURITY INSTRUMENT"), (1) the Mortgage dated May 22, 1987 in the original amount of $175,700.00 with a remaining unpaid principal balance of $166,625.38, recorded on June 12, 1987, Instrument #: Y00487163 Liber: 11277, Page: 258 ("Mortgage A"), Mortgage dated December 13, 1993 in the original amount of $61,724.62, recorded on March 30, 1994, Instrument #N00294089, Book: 119, Page: 69 ("Mortgage B"), Consolidation, Extension & Modification Agreement dated December 13, 1993, consolidates ("Mortgages A & B") to form a single lien in the amount of $228,350.00 ("CEMA") and recorded on March 30, 1994, Instrument # N00394089 Book: 19119, Page: 125, SECTION: 146.19, BLOCK: 1 and LOT: 32 with the Deed of Records of WESTCHESTER County, NY, and (2) the Note ("NOTE"), bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the ("PROPERTY"), located at 7 FERNWOOD AVENUE, RYE, NY, 10580, the real property described being set forth as follows as described in the attached "Exhibit A".

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in the Modification. The Borrower and the Lender agree to modify the terms of the Note and Security Instrument as follows. The Borrower and the Lender agree that the provisions of this modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument:

1) Modification is contingent upon receipt of a Good Faith Payment in the amount of $200,000.00 due to Servicer no later than May 27, 2022 and will post $1,877.51 to 3rd Party PS Corporate Advances, $19,088.53 to Prior Servicer Corporate Advances and $179,033.96 to Prior Servicer Escrow Advances.

2) As of May 11, 2022 the unpaid principal balance under the Note and the Security Instrument is U.S. $240,424.97 consisting of the amounts loaned to Borrower, not including interest or advances.

3) The Borrower acknowledges that the Lender has incurred, paid or otherwise advanced taxes and or insurance premiums and other expenses necessary to protect and preserve its interest pursuant to the Note and Security Instrument, and that such costs and expenses equal to the total amount of $264,401.84. The following are the costs and expenses advanced on the Borrower's behalf:

   a. Accrued & Unpaid Interest         $171,753.53
   b. Escrow Shortage Advanced          $43,914.98
   c. Prior Servicer Escrow Advances    $46,993.34 (remaining balance)
   d. Legal Attorney Fees               $1,125.00
   e. Foreclosure Expenses              $614.99

4) The Borrower agrees that the amount that has been advanced by the Lender will be added to the unpaid principal balance payable under the Note and Security Instrument. Therefore, the unpaid principal balance has been **increased** to $504,826.81   The Borrower agrees to accept a modified payment schedule to repay the unpaid principal balance.

5) The Borrower accepts the modification and agrees to pay the increased unpaid principal balance, together with interest, late charges, and advances. The following terms have been modified:

Loan

  a. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.500%, from May 01, 2022.

  b. Interest under this Modification shall be an Arrears method and calculated on a 360-day year consisting of twelve 30-day months.

  c. Borrower shall make monthly payments of principal and interest of U.S. $2,269.51, beginning on June 01, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

  d. Monthly payments are amortized 480 months due and payable in 480 months.

  e. The principal and interest payment does not include the monthly escrow constant of $2,402.80. The monthly escrow constant is subject to change at each analysis.

  f. Total payment amount is $4,672.31.

  g. Lender will bring the loan due for the June 01, 2022 payment.

  h. If on **May 01, 2062** ("EXTENDED MATURITY DATE"), there remains an amount due under the Note and the Security Instrument, as amended by this Agreement, this amount shall be due in full on the Maturity Date.

  i. Borrower acknowledges that as of the date of the Modification, current amounts due include:
    $232.16 in Late Charges
    $145.10 in Prior Servicer Late Charges

  j. Borrower will make such payments at such place as Lender may require.

6) Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Note and Security Instrument. The following terms and provisions are modified and amended as of the date specified in paragraph No. 1 above:

  a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note are waived. By executing this Agreement, Borrower agrees to make the same monthly payments of principal and interest as stated herein above for the remaining term of the Note.

  b. all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions providing for an adjustment in the interest rate are changed to set the rate as stated herein.

7) Borrower(s) agrees that in the event of a default under the terms of this Agreement, the Lender may exercise all rights and remedies provided in the Note and Security Instrument and as provided by applicable law, including any judicial or non-judicial foreclosure or other proceeding.

8) Borrower(s) hereby consents and agrees that in the event suit is instituted, the Lender may enforce any and all of the provisions of the Note and Security Instrument and proceed immediately to collect the full amount of principal, interest, attorney fees and costs as acknowledged herein.

9) In the event any of the provisions contained hereinabove are determined to be unenforceable by a court of competent jurisdiction and it is necessary to proceed to trial, then Borrower irrevocably waives all rights to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the obligations modified thereby.

10) In addition to the events of default contained in the Note and Security Instrument it will be an event of default under this Agreement if the Borrower(s) fails to pay the modified payment schedule according to the terms set forth hereinabove.

11) For and in consideration of the forbearance and benefits received herein, Borrower(s) hereby releases and forever discharges the Lender, and all previous holders of the hereinabove described Note from any and all claims of whatever nature and kind arising out of all transactions related to said Note.

12) The Lender and Borrower(s) agrees that all provisions of the Security Instrument and any other collateral documents not specifically mentioned herein shall remain in full force and effect, and Borrower(s) shall comply with all covenants, agreements and requirements of the security instrument.

Loan

13) In the event that any one or more of the provisions contained in this Agreement or in the Loan Documents shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of the Loan Documents.

14) Nothing in this Agreement shall be understood or construed to be a satisfaction, novation, remission, or release in whole or in part of the Note, Mortgage, and security documents. Except as otherwise specifically provided in this Agreement, the Note, Mortgage and Security Instrument will remain unchanged and Borrower(s) will be bound by and obligated to comply with all of the terms and provisions thereof, as amended by this Agreement.

15) On the loan payments due date, default will occur if the payment is not received within the allowable grace period (if applicable).

16) If the Borrower has, since inception of the loan but prior to this Agreement, received a discharge in a Chapter 7 Bankruptcy, and there having been no valid reaffirmation agreement of the underlying debt, by entering into this agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt. Acceptance of the modification shall not make the Borrower personally liable for the debt. Any payments received will reduce the amount due under this Agreement.

17) This Agreement shall be binding upon and inure to the benefit of, the Borrower and the Lender and their respective heirs, legal representatives, successors and assigns.

Dated: _____                              Dated: _____

I acknowledge and agree to the modification to the Note and Security Instrument set forth above.

**WITNESSES:**

_____          _____
                                                              JOHN W WELLS (Borrower)

_____          _____
                                                              SHELLEY GROSE WELLS (Vested Interest)

## ACKNOWLEDGEMENT

STATE OF _____   )
                                                           )ss.
COUNTY OF _____   )

On _____ before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
[Seal]                                                        Notary Public
                                                                 My Comm. Expires

Loan ▇▇▇▇▇▇▇▇

## **ACKNOWLEDGEMENT**

STATE OF _____  )
                                                                      )ss.
COUNTY OF _____  )

On _____ before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Seal]

_____
Notary Public
My Comm. Expires

LOAN MODIFICATION AGREEMENT                                                                                                        (page 4 of 6)
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇

Loan

**WITNESSES:**

_____

_____

U.S. Bank Trust National Association, as Trustee of the Bungalow Series IV Trust
BY SN SERVICING CORPORATION, ITS SERVICING AGENT

BY:
_____
         JEFFREY HAROLD HARRISON
ITS:     AUTHORIZED AGENT
NMLS:  1314656

DATE:
_____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## ACKNOWLEDGEMENT

STATE OF CALIFORNIA

)ss.

COUNTY OF HUMBOLDT

On _____, 2022 before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Seal]                                                          _____
                                                                Notary Public
                                                                My Comm. Expires:

LOAN MODIFICATION AGREEMENT                                                          (page 5 of 6)

Loan

**EXHIBIT "A"**

**Section 146.19, Block 1 and Lot 32**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Rye, County of Westchester and State of New York, known and designated as Lot Nos. 210 and 211 and part of Lot No. 212 as shown on map entitled "Subdivision Map of Rye Beach Manor in the Village of Rye, Westchester County, New York" made by Ward Carpenter and Company, Inc., Constructing Engineers and Surveyors, White Plains, New York, dated June 14, 1924 and filed in the Office of the Register of the County of Westchester June 27, 1924 as Map No. 2636, more particularly bounded and described as follows:

BEGINNING at a point on the Northerly side of Fernwood Avenue, distant 238.34 feet Easterly from the corner formed by the intersection of the Northerly side of Fernwood Avenue and the Easterly side of Milton Road;

RUNNING THENCE North 29 degrees 05 minutes 20 seconds East, 80.00 feet to the Southerly line of Lot No. 236;

THENCE South 60 degrees 54 minutes 40 seconds East and along Lot Nos. 236, 237 and 238, 55.00 feet to the Westerly line of Lot No. 209;

THENCE along the Westerly line of Lot No. 209, South 29 degrees 05 minutes 20 seconds West, 80.00 feet to the Northerly side of Fernwood Avenue;

THENCE along the Northerly side of Fernwood Avenue, North 60 degrees 54 minutes 40 seconds West, 55 feet to the point or place of BEGINNING.

**Premises known as 7 Fernwood Avenue, Rye, New York**